723 A.2d 1238 (1999)
Linda LONG, Plaintiff-Respondent/ Cross-Appellant,
Everett B. Long, III, Alexander M. Long and Nikolaus A. Long, Plaintiffs,
v.
Donald E. LEWIS, individually and in his official capacity, John Robert Shaw, individually and in his official capacity, Dennis J. Cunningham, individually and in his official capacity, Kathleen M. Vansteen, individually and in her official capacity, Patricia MacDaniels, individually and in her official capacity, George Yefchak, individually and in his official capacity, the New Jersey Department of Corrections, Defendants-Appellants/ Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1999.
Decided February 23, 1999.
*1239 Steven J. Zweig, Deputy Attorney General, for defendants-appellants/cross-respondents (Peter Verniero, Attorney General, attorney for appellants; Mary C. Jacobson, Assistant Attorney General, of counsel; Steven J. Zweig, on the brief).
Steven P. Weissman, Somerset, for plaintiff-respondent/cross-appellant (Weissman & Mintz, attorneys; Sharra E. Greer, Washington, DC, and Mr. Weissman, on the brief).
Before Judges MUIR, Jr., EICHEN, and COBURN.
The opinion of the court was delivered by COBURN, J.A.D.
The primary question raised by this appeal is whether the entire controversy doctrine bars a discharged State civil service employee, who has failed to raise a claim of discrimination in an administrative proceeding before the Merit System Board, from suing her supervisors and employer in court under the Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to 42. We hold that the LAD action may be maintained.

I.
Plaintiff Linda Long, a State civil service employee, was denied an extension of a medical leave of absence by the administrator of the Alfred C. Wagner Youth Correctional Facility, defendant Donald E. Lewis. His written explanation indicated that Long had insufficiently documented the need for further time off to deal with her condition of major depression. He wrote that he would be willing to reconsider her request if she provided appropriate documentation within seven days. Failing that, she had to return to work or she would be dismissed pursuant to N.J.A.C. 4A:2-6.2(c), a regulation that provides for dismissal if a classified civil service employee fails to return to work for five consecutive days at the end of an approved leave of absence. Long did not comply, Lewis dismissed her on November 7, 1991, and she appealed to the Merit System Board ("MSB" or "the Board"), which referred the matter to the Office of Administrative Law, pursuant to N.J.A.C. 4A:2-2.9.
At the hearing before the Administrative Law Judge ("ALJ"), Long was represented by counsel. The only defense offered was that she had done her best to satisfy Lewis's request for documentation but had been frustrated in that endeavor by her psychiatrist's initial unwillingness to report in detail on her condition. She claimed that *1240 Lewis was arbitrary in failing to give her additional time to persuade the doctor of the need to supply the information to which she acknowledges Lewis was entitled. The ALJ concluded that Long had used her best efforts to comply with the request in the brief time allowed but declined to accept that as a basis for overturning her dismissal. In short, he found that the admin-istrator was entitled to the information and that the burden of supplying it in a timely manner belonged with Long.
Long appealed to the MSB pursuant to N.J.A.C. 4A:2-2.9. On July 13, 1993, the Board sustained the ALJ's determination that discipline was appropriate based on Long's failure to provide the requested medical documentation in a timely fashion and her subsequent failure to return to work within the five-day requirement of N.J.A.C. 4A:2-6.2(c). However, the Board also noted that the documentation subsequently provided and placed in the record before the ALJ fully supported the reasonableness of the request for an extended leave. Because Long had "diligently attempted to fulfill her employer's request for further information," the Board held that the dismissal was not justified, and instead, it reduced the punishment to a tenday suspension and directed that she receive mitigated back pay beginning six months after the effective date of the suspension.
She returned to work in July. Subsequently, plaintiff reviewed her personnel file and, after consultation with her attorney, became convinced that the file indicated her supervisors may have taken their actions against her because of a prejudice against mental illness. She had not previously entertained such a suspicion.

II.
Long filed this action in the Law Division after she returned to work. Defendants moved unsuccessfully for summary judgment, and we granted their motion for leave to appeal. We also granted plaintiff's motion for leave to cross-appeal from that portion of the order denying her the right to seek back pay for periods of time not allowed by the MSB.
Plaintiff seeks to pursue three of the causes of action set out in her Superior Court complaint: malicious prosecution; "intentional misrepresentation"; and a claim under the LAD. The first two actions cannot be maintained.
An action for malicious prosecution, where a prior criminal action is not involved, requires proof that defendants instituted a proceeding that is adjudicatory in nature. Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 565, 117 A.2d 889 (1955). The initial dismissal of plaintiff was not an adjudicatory proceeding. Therefore, plaintiff cannot satisfy a necessary element of that cause of action.
The claim of "intentional misrepresentation" is based on an allegation that two of the defendants testified falsely in the administrative hearing before the ALJ. But a "statement made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability." Erickson v. Marsh & McLennan Co., 117 N.J. 539, 563, 569 A.2d 793 (1990). Therefore, that count failed to state a claim upon which relief can be granted.
The denial of summary judgment on these counts is reversed, and we turn to the question of plaintiff's entitlement to pursue a LAD claim.
The LAD claim alleges that defendants dismissed plaintiff because of her major depression, which she asserts was a handicap under N.J.S.A. 10:5-4.1. Defendants argue that the LAD claim is barred by the entire controversy doctrine, res judicata, and collateral estoppel. Although they also argue that plaintiff's condition was not a handicap under the LAD, they did not seek, and we did not grant, leave to appeal on that issue. Therefore, we will confine our discussion to the procedural viability of the LAD claim, first addressing collateral estoppel.
The Supreme Court has often emphasized this State's strong policy against employment discrimination, Andersen v. Exxon Co., 89 N.J. 483, 492, 446 A.2d 486 (1982), and the "special niche in [its] legislative scheme" for the Law Against Discrimination. Accord *1241 Goodman v. London Metals Exchange, Inc., 86 N.J. 19, 30, 429 A.2d 341 (1981).
Consequently, in Hahn v. Arbat Systems Ltd., 200 N.J.Super. 266, 491 A.2d 58 (App. Div.1985) this court held that collateral estoppel would not prevent an employee who had unsuccessfully sought unemployment benefits before the Division of Unemployment and Disability Insurance, alleging that she had been forced to leave her employment because of unlawful discrimination, from maintaining a subsequent LAD action against her employer. Id. at 268-69, 491 A.2d 58.
Although Hahn might be read as holding that collateral estoppel can never be applied in any LAD case where an administrative agency, other than the Division on Civil Rights, has ruled against an employee on the issue of discrimination, another panel has ruled that it should be read more narrowly. Ensslin v. Township of North Bergen, 275 N.J.Super. 352, 373, 646 A.2d 452 (App.Div. 1994), certif. denied, 142 N.J. 446, 663 A.2d 1354 (1995).
Ensslin arose from the claim by a police officer, rendered a paraplegic by a skiing accident, that he had been improperly dismissed from his employment in violation of the LAD. Id. at 357, 646 A.2d 452. He asserted that his employer failed to make a reasonable accommodation for his handicap. Id. at 357-58, 646 A.2d 452. This assertion was first offered at a local departmental hearing. Id. at 358, 646 A.2d 452. Failing there, the officer appealed to the Merit System Board, which, in turn, referred the matter to the Office of Administrative Law. Ibid. The ALJ considered and rejected the officer's LAD claim. Id. at 358-59, 646 A.2d 452. The Board affirmed. Id. at 360-61, 646 A.2d 452. In the meantime, the officer had filed a LAD claim based on the same circumstances in the Law Division. Id. at 367, 646 A.2d 452. On appeal, the doctrine of collateral estoppel was held to bar Ensslin's claim in the Law Division primarily because it had been expressly rejected by a forum of equal jurisdiction in formal proceedings. Id. at 369, 646 A.2d 452. Ensslin`s views on the collateral estoppel issue were noted with approval by the Supreme Court in Hernandez v. Region Nine Housing Corp., 146 N.J. 645, 659, 684 A.2d 1385 (1996).
The Ensslin, supra, court distinguished Hahn and limited its reach:
Hahn involved an administrative hearing before the Division of Unemployment Compensation where the hearings are conducted in an informal fashion by a hearing officer, not an ALJ. Although discrimination was put in issue by the plaintiff in that case, and it was stipulated that the plaintiff was not denied the opportunity to present evidence on that point, it is not clear whether she was represented by counsel in the administrative proceeding. Further, the Appellate Division was not afforded an opportunity to compare the development of the discrimination on the administrative proceeding because the administrative record was not available for review. Finally, the remedies sought by plaintiff in the administrative proceeding were substantially different from the remedies sought by her in the civil proceeding.
[275 N.J.Super. at 372-73, 646 A.2d 452.]
But there is a significant difference between the cases of Long and Ensslin that undercuts the defendant's reliance on collateral estoppel. Ensslin raised the LAD as a defense in the administrative hearing; Long did not. Collateral estoppel only bars relitigation of issues that were actually litigated. Ensslin, supra, 275 N.J.Super. at 369, 646 A.2d 452 (citing Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, 26 N.J. 307, 314-16, 139 A.2d 741 (1958)). Therefore, it would appear that Long's LAD claim may only be barred if it runs afoul of the entire controversy doctrine or res judicata.
In Thornton v. Potamkin Chevrolet, 94 N.J. 1, 462 A.2d 133 (1983), the Court held that the entire controversy doctrine does not bar an employee's pursuit of a LAD claim in the State Division on Civil Rights when the employee has previously contesteda dismissal, without raising discrimination, in a grievance arbitration under a union contract.
The entire controversy doctrine is not applicable here because there is no comparability between private contractual arbitration and court or administrative adjudications. *1242 The doctrine presumes forums of equal jurisdiction. The Division on Civil Rights is unlike the identical forum of entire jurisdiction contemplated by the single controversy rule. The Division offers a plenary hearing (rather than a limited arbitration), a focus on the individual (rather than the representative claim), and an agency as factfinder particularly sensitive to the disposition of the claim. Moreover, the function of the arbitrator and the agency head are fundamentally different. In the private sector the arbitrator cannot consider the public interest except as the provisions of the parties' contract direct. In contrast, the Legislature has specifically entrusted the administrative agency with the duty to fulfill a statutory mandate in accordance with particularized rules of practice and procedure it shall develop. In addition, the Division on Civil Rights has remedial powers far beyond those of an arbitrator. Terry v. Mercer Cty. Freeholders Bd., 86 N.J. 141, 158, 430 A.2d 194 (1981); Jackson v. Concord Co., 54 N.J. 113, 126-27, 253 A.2d 793 (1969).
[Id. at 5, 462 A.2d 133.]
In Ensslin, supra, the court emphasized the distinction drawn by Thornton between private arbitration and court or administrative adjudications. 275 N.J.Super. at 373-74, 646 A.2d 452. Based on Thornton's treatment of an administrative agency's determination as being on a par with a court adjudication, the court held that collateral estoppel barred relitigation of the issue decided by the agency. Id. at 374, 646 A.2d 452. But we do not read Thornton as holding that an administrative agency is always a forum of equal jurisdiction for purposes of the entire controversy doctrine.
In some cases, the agency may be an equal forum. For example, a plaintiff who has unsuccessfully pursued a LAD claim in the Division on Civil Rights may not thereafter relitigate the claim in the Law Division, as is otherwise authorized by N.J.S.A. 10:5-13. Christian Bros. Inst. v. Northern New Jersey Interscholastic League, 86 N.J. 409, 415, 432 A.2d 26 (1981); Hermann v. Fairleigh Dickinson Univ., 183 N.J.Super. 500, 504, 444 A.2d 614 (App.Div.), certif. denied, 91 N.J. 573, 453 A.2d 884 (1982). But Long did not take that course, and those cases do not foreclose this lawsuit.
The forums under consideration here are the MSB and the Superior Court. Defendants concede that plaintiff had a right to preserve the option of pursuing a LAD case in court[1] because she could not obtain any relief from the MSB other than reinstatement, reduction in punishment, and back pay. In her court action, however, plaintiff could obtain the relief available from the MSB plus compensatory damages for pain and suffering or personal humiliation, punitive damages, and counsel fees. Hernandez, supra, 146 N.J. at 653, 684 A.2d 1385. In addition, she could obtain damages and counsel fees against defendants who could not be joined in the administrative action. Since the remedies available in court far surpass those available from the administrative agency, it follows that at least for purposes of the entire controversy doctrine the MSB and the court are not forums of equal jurisdiction under Thornton. Cf. Hernandez, supra, 146 N.J. at 661, 684 A.2d 1385 (holding that a LAD claim is not barred by proceeding before the EEOC); Kopin v. Orange Products, Inc., 297 N.J.Super. 353, 375, 688 A.2d 130 (App.Div.) (holding that a quantum meruit action by an employee is not barred by an earlier resort to Wage Collection Division), certif. denied, 149 N.J. 409, 694 A.2d 194 (1997); Perry v. Tuzzio, 288 N.J.Super. 223, 230-31, 672 A.2d 213 (App. Div.1996) (holding that an action against persons claimed to be liable to a decedent's estate is not barred by a prior exception proceeding in an accounting to which they were not parties nor reasonably joinable); Cafferata v. Peyser, 251 N.J.Super. 256, 262-63, 597 A.2d 1101 (App.Div.1991) (holding that a medical malpractice action is not *1243 barred by a Special Civil Part action by a physician seeking payment of his bill); Lickfield v. Lickfield, 260 N.J.Super. 21, 24-25, 614 A.2d 1365 (Ch.Div.1992) (holding that marital tort is not barred by not being raised in a summary domestic violence procedure subject to statutorily limited remedies).
Defendants rely on the aspect of the entire controversy doctrine requiring at least notice of other claims, Cogdell v. Hospital Ctr. at Orange, 116 N.J. 7, 15, 560 A.2d 1169 (1989); but the notice requirement has not been considered applicable in any of the above cited cases involving unequal forums. Further, the defendants have failed to explain how they were prejudiced by their lack of notice of the potential LAD claim in the MSB proceedings. Even assuming that a notice requirement applied, a violation would only warrant dismissal of the LAD action if the lack of notice caused prejudice. Cf. Gelber v. Zito Partnership, 147 N.J. 561, 566-67, 688 A.2d 1044 (1997).
We also believe that the Court's observation in Thornton, supra, that "in the vast majority of cases, grievance proceedings may resolve misunderstanding and often will resolve the entire dispute," 94 N.J. at 8, 462 A.2d 133, is relevant here. Confronted by the loss of employment, or some other serious form of discipline, far more often than not, a civil service employee who is convinced that the punishment is the result of discrimination will either raise that point as a defense in the administrative proceeding or seek relief directly in court or in the Division on Civil Rights.[2] Thus, we expect attempts at instituting a second proceeding, as occurred here, will be rare.
The claim preclusion aspect of the entire controversy doctrine is essentially res judicata by another name. Culver v. Insurance Co. of N. Amer., 115 N.J. 451, 463-64, 559 A.2d 400 (1989) (explaining that in terms of claim preclusion "the entire controversy doctrine is wholly consistent with the doctrine of res judicata"); see also Geoffrey C. Hazard, Jr., An Examination Before and Behind the "Entire Controversy" Doctrine, 28 Rutgers L.J. 7, 7 (1996). Thus, for the reasons stated above, we are also convinced that the doctrine of res judicata is equally inapplicable.
Given the overarching importance of eliminating discrimination in the workplace, allowing plaintiff an opportunity to pursue her LAD claim in the Law Division exceeds in importance any inconvenience to defendants. Defendants have also expressed concern about the possibility that a determination in the trial court may vary in result from that reached by the administrative agency. However, implicit in their concession that plaintiff was entitled to withhold her LAD claim is the recognition that the subsequent proceeding could lead to a result contrary to the decision of the MSB. Therefore, we affirm the order denying defendants' motion to dismiss the LAD claim.
We conclude by addressing the issue raised in plaintiff's cross-appeal. The motion judge barred plaintiff from including within her LAD action a claim for back pay denied to her by the Board for the first six months following her dismissal. The Board's action in this respect was based on its determination that discipline was warranted because plaintiff had failed to meet her obligation of providing adequate materials to document her medical condition and had failed to return to work as ordered. However, plaintiff's LAD claim puts into issue the motivation for the initial dismissal. Since we are permitting that claim to proceed, we fail to see any sound reason for foreclosing this aspect of it. Surely, had the Board considered and upheld a LAD defense to the dismissal, there would have been, in its view, no ground for imposing this penalty. Thus, the potential for a "conflicting decision" in the Law Division should not be allowed to interfere with full vindication under the LAD.
Affirmed in part, reversed in part, and remanded for trial.
NOTES
[1] "If the plaintiff wanted to preserve her LAD claim while pursuing her administrative remedies, all she had to do was file an action simultaneously in the Superior Court and notify the ALJ and parties that she was reserving that LAD claim for later disposition in Superior Court." (Def.'s Reply Brief at 10.) We note, however, that the individual defendants were not parties in the action before the MSB.
[2] We note that contemporaneous filings by an employee with the Division on Civil Rights and the MSB may implicate principles discussed by the Supreme Court in City of Hackensack v. Winner, 82 N.J. 1, 410 A.2d 1146 (1980).